# FILED

07/26/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0402

DA 21-0402

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2022 MT 150

THOMAS MANN POST NO. 81 OF THE
AMERICAN LEGION, DEPARTMENT OF
MONTANA, a Montana public benefit corporation,
and the TOWN OF CULBERTSON, a political
subdivision of the State of Montana,

        Plaintiffs, Counterdefendants,
        and Appellees.

    v.

KNUDSEN FAMILY LIMITED PARTNERSHIP,

        Defendant, Counterclaimant,
        and Appellant.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
                 In and For the County of Roosevelt, Cause No. DV-16-13
                 Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Emily Jones, Jones Law Firm, PLLC, Billings, Montana

    For Appellee American Legion:

        Gregory G. Schultz, Jeffrey R. Kuchel, Crowley Fleck PLLP,
        Missoula, Montana

    For Appellee Town of Culbertson:

        Laura Christoffersen, Christoffersen & Knierim, P.C., Culbertson,
        Montana

Submitted on Briefs:  April 13, 2022

Decided:  July 26, 2022

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant and Counterclaimant Knudsen Family Limited Partnership ("KFLP") appeals the following: (1) the February 18, 2021 Order granting summary judgment to Thomas Mann Post No. 81 of the American Legion, Department of Montana ("Legion") and denying KFLP's motion for summary judgment against the Town of Culbertson ("Town"); (2) the July 26, 2021 Order awarding costs and attorney fees to Legion; and (3) the September 7, 2021 Final Judgment quieting title in favor of Legion by the Fifteenth Judicial District Court, Roosevelt County. We restate and address the following issues:

1. *Whether the scope of the Town Strip easement is limited to the express terms of the written instrument granting a right-of-way only for a water pipeline and access thereto.*

2. *Whether the District Court erred in granting summary judgment in favor of Legion by finding the existence of an implied easement by preexisting use.*

3. *Whether the District Court abused its discretion in granting attorney fees without holding an evidentiary hearing.*

¶2 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 KFLP owns and operates a ranch in Roosevelt County. This action concerns a property dispute as to whether Legion has an easement across KFLP's property to access Legion Park, located along the banks of the Missouri River in Culbertson.

**History of Ownership**

¶4    Prior to 1911, Augusta Bruegger owned the real property now owned by KFLP and Legion. In 1911, Bruegger conveyed a tract of land to Valley County ("County Strip") following a petition to open a new public highway. The County Strip was granted "to that purpose and for the use of such highway." In 1913, Bruegger granted an express easement to the Town. The easement ("Town Strip") is described in relevant part as:

> A right of way only (together with the right of access thereto at all reasonable times and places) for that certain pipeline of the second party over and upon the northeast quarter . . . , and being a strip of land twenty (20) feet wide, to-wit, ten (10) feet wide on each side of the center line of the water main pipe of the Town of Culbertson, as the same is now located and constructed . . . .

The County Strip and Town Strip easements are indicated in the image below:



¶5     At some point prior to 1944, James and Edna Swindle obtained the property from Bruegger, Edna Swindle's mother.  In 1944, the Swindles donated to Legion a parcel of their property ("Legion Park Parcel") along the Missouri River for use as a park in tribute to returning service members from World War II.  The document of conveyance did not include an express easement to access the Legion Park Parcel.  At the time the Swindles severed the parcel from their property, an existing road ("Access Road"), also used as the driveway to their home, provided access to the Legion Park Parcel.  The Access Road overlaps the Town Strip and a portion of the County Strip.

¶6     In 1956, the Swindles conveyed the real property to Archie Lewis by deed, eventually recorded in 1963.  In 1991, Wayne and Janice Knudsen took title to the real property, described as:

> Township 27 North, Range 56 East, M.P.M.:
> Section 4: NW¼NW¼, Lots 1 and 3, portions of Lots 2 and 5
>
> Township 28 North, Range 56 East, M.P.M.:
> Section 33: E½SW¼, W½SE¼

In 2010, Wayne and Janice Knudsen conveyed the property to KFLP by a quit claim deed, which expressly noted the Town Strip and County Strip easements.

¶7     From severance and creation of the park in 1944, Legion and the public have accessed the Legion Park Parcel along the Access Road.  The Access Road commenced at the northwest corner of the Legion Park Parcel, traveled about 400 feet over Section 4 of KFLP's property, then crossed into Section 33 overlapping a portion of the County Strip, and continued over the Town Strip heading northwest, finally connecting to Road 1020

5

and exiting the KFLP property at the northwest corner of Section 33. In 1992, the Access Road was realigned, as pictured below, to accommodate the installation of irrigation pivots on the KFLP property.



¶8 After the Swindles donated the Legion Park Parcel, Legion constructed a hall open to the public, which served as its headquarters until the 1950s. In the 1960s, Legion installed a shed for public nature observation. The park has frequently been used by the Legion members, Boy Scouts, and the public for civic events, camping, hunting, and nature observation.

¶9 In 1994, Legion and Miles Knudsen, a member of KFLP, entered into an agreement wherein Knudsen agreed to move the existing Access Road effective January 1, 1995. The agreement recognized the historic use of the Access Road by Legion and that its use as

6

ingress and egress to the Legion Park Parcel would continue for Legion and its invitees, subject to Legion's permission. Knudsen never relocated the road.

¶10 Beginning in the mid to late 1990s, Knudsen began impeding access to the Legion Park Parcel. In 2016, Knudsen installed a locked gate over the Access Road to prevent Legion, its invitees, and the public from accessing the Legion Park Parcel.

¶11 In August 2016, Legion brought this action to quiet title and to obtain a declaratory judgment that it owns an easement across KFLP's property for public access to the Legion Park Parcel. The Town joined the suit, seeking to quiet title to the Town Strip granted in 1913 by Bruegger. KFLP answered the Complaint, denying Legion had an easement across its property. KFLP filed counterclaims for quiet title against Legion and the Town.

¶12 On February 18, 2021, the District Court granted summary judgment in favor of Legion and denied KFLP's summary judgment motion against the Town. The District Court held that Legion had an implied easement by preexisting use, and in the alternative, the undisputed facts established a prescriptive easement or an easement by necessity. The District Court granted judgment in favor of the Town after finding that "[t]aken together, the Town Strip and the County Strip constitute a publicly-owned roadway."

¶13 On February 26, 2021, following the grant of summary judgment in its favor, Legion moved for an award of attorney fees and costs. In its brief opposing the award, KFLP requested an evidentiary hearing on the reasonableness of any attorney fees granted. KFLP also noted its request for a hearing in an April 19, 2021 email to the District Court. The District Court, after noting "[n]either party has requested a hearing," awarded Legion its costs, and as supplemental relief under § 27-8-313, MCA, granted Legion its attorney fees,

7

concluding the amount sought was "reasonable" and supported by Legion's counsel's detailed affidavit.

## STANDARDS OF REVIEW

¶14 We review a district court's grant of summary judgment de novo. *Waters v. Blagg*, 2008 MT 451, ¶ 8, 348 Mont. 48, 202 P.3d 110, *overruled on other grounds by Earl v. Pavex, Corp.*, 2013 MT 343, 372 Mont. 476, 313 P.3d 154. Legal conclusions and mixed questions of law and fact are also reviewed de novo. *Waters*, ¶ 8 (citations omitted).

¶15 A district court's award of reasonable attorney fees is a discretionary act we will not reverse absent an abuse of discretion. *Rothing v. Kallestad*, 2007 MT 109, ¶ 53, 337 Mont. 193, 159 P.3d 222 (citations omitted).

## DISCUSSION

1. *Whether the scope of the Town Strip easement is limited to the express terms of the written instrument granting a right-of-way only for a water pipeline and access thereto.*

¶16 KFLP argues the District Court's findings of fact regarding the Town Strip are clearly erroneous because they exceed the scope expressed in the written instrument of conveyance. KFLP asserts that by declaring that the Town Strip and County Strip "[t]aken together" constitutes "a publicly-owned roadway," the District Court incorrectly transformed a right-of-way utility easement into a public roadway owned by the Town in fee simple. On appeal, the Town concedes that the water pipeline easement "granted in 1913 by Augusta Bruegger remains 'as is,'" and argues the District Court did not expand the scope of the easement.

8

¶17 "Where an easement is specific in nature, the breadth and scope of the easement are strictly determined by the actual terms of the grant." *Mason v. Garrison*, 2000 MT 78, ¶ 21, 299 Mont. 142, 998 P.2d 531 (citing *Bridger v. Lake*, 271 Mont. 186, 191, 896 P.2d 406, 408 (1995); § 70-17-106, MCA; *Titeca v. State*, 194 Mont. 209, 214, 634 P.2d 1156, 1159 (1981)). If the grant of an easement "is specific in its terms, it is decisive of the limits of the easement." *Titeca*, 194 Mont. at 214, 634 P.2d at 1159 (quoting 25 Am. Jur. 2d Easements and Licenses § 73, at 479).

¶18 On appeal, the Town and KFLP, in all material respects, are in agreement: the terms of the 1913 written easement define the scope of the Town Strip easement as a "right of way only" to the Town's water pipeline and "the right of access thereto at reasonable times and places." To the extent the District Court ostensibly expanded the 1913 written easement defining the scope of the Town Strip by granting summary judgment against KFLP on the Town's complaint, this was in error. Because the parties are not in material dispute, we need not address this issue further.[1]

2. *Whether the District Court erred in granting summary judgment in favor of Legion by finding the existence of an implied easement by preexisting use.*

¶19 The District Court held Legion had an implied easement by preexisting use, or in the alternative, an easement by necessity or by prescription. Because we conclude the

---

[1] Withholding further analysis regarding whether the District Court erred by expanding the Town Strip's scope to allow public access is also warranted because, in any event, public access to the Legion Park Parcel is available via the implied easement by preexisting use, which overlaps with the Town Strip, as discussed in the next section.

District Court correctly held Legion has an implied easement by preexisting use, we need not address the District Court's alternative holdings.

¶20 An easement by implication is created by operation of law at the time of severance, rather than by written instrument. *Albert G. Hoyem Tr. v. Galt*, 1998 MT 300, ¶ 17, 292 Mont. 56, 968 P.2d 1135. An implied easement by preexisting use arises if "a use exists on the 'servient part' that is reasonably necessary for the enjoyment of the 'dominant part,' and a court determines that the parties intended the use to continue after division of the property." *Waters*, ¶ 14 (quoting *Wolf v. Owens*, 2007 MT 302, ¶ 16, 340 Mont. 74, 172 P.3d 124). The party asserting an implied easement by preexisting use must show the following three elements: (1) the tracts at issue were severed from common ownership; (2) the use that exists on the servient tract is apparent, continuous, and reasonably necessary for the beneficial use and enjoyment of the dominant tract at the time of severance, and (3) the parties to the deed intended the use to continue after division of the property. *Waters*, ¶ 14.

¶21 To establish the intent element, the court may make an inference "from the use itself." *JRN Holdings, LLC, v. Dearborn Meadows Land Owners Ass'n*, 2021 MT 204, ¶ 31, 405 Mont. 200, 493 P.3d 340 (citations omitted). An inference of intent must stem from use that "continued so long and was so obvious or manifest as to show that it was meant to be permanent." *Graham v. Mack*, 216 Mont. 165, 174, 699 P.2d 590, 596 (1984) (quoting 2 *Thompson on Real Property*, § 351 (1980)).

¶22 KFLP argues the District Court erred by resolving multiple material issues of disputed fact. In particular, KFLP asserts that the Swindles' intent is disputed and cannot

10

be established only through articles published by the local newspaper, and that Legion failed to provide any other evidence that Legion and the Swindles intended for the Access Road to continue to serve as access to the Legion Park Parcel after severance. KFLP also takes issue with the court's reliance on the "nature of [the] gift" when it determined the parties' intent. In response, Legion argues that in addition to historical newspaper articles, it provided multiple historic lay witness affidavits and two expert affidavits to support its assertion of the historical use of the Access Road, aerial photography dating back to the 1940s, and expert testimony from a local title examiner to support its claim of an implied easement. Legion asserts KFLP offered no evidence to controvert the evidence it provided the District Court.

¶23 It is undisputed that both parcels at issue were owned by the Swindles at the time of severance and that the Swindles used the Access Road as their driveway and for ingress and egress to the Legion Park Parcel prior to severance. Prior to severance, use of the Access Road was reasonably necessary to access the Legion Park Parcel—the servient Road acted as a quasi-easement for the dominant Parcel. It is from the existence of that use prior to severance, "that it may be inferred that the parties intended the use to continue, and thus the quasi-easement ripens into a true easement upon severance." *Yellowstone River, LLC v. Meriwether Land Fund I, LLC*, 2011 MT 263, ¶ 36, 362 Mont. 273, 264 P.3d 1065. Use by Legion, its invitees, and the public, obviously and manifestly continued as intended for decades prior to KFLP obtaining ownership of its property in the 1990s.

¶24 KFLP has not provided any evidence to dispute the ongoing use of the Access Road, but instead asserts it "discovered evidence of other routes used to access the Legion Park

11

Parcel, including signs with arrows pointing to the park that had fallen down." This evidence does nothing to controvert that the Access Road was intended to be used to access the Legion Park Parcel and only serves to expand the areas in which Legion and the public have historically crossed KFLP's property, rather than limit it. While KFLP may speculate that other routes in addition to the Access Road have been used over the years, it has failed to meet its burden to controvert the evidence that the location *as asserted by Legion*, namely the Access Road, has been historically used by Legion and the public to access the park for decades. Conclusory statements, speculative assertions, and mere denials are insufficient to defeat a motion for summary judgment. *Tin Cup Cty. Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 54, 347 Mont. 468, 200 P.3d 60. KFLP has failed to provide contradicting evidence that the Access Road was intended—and has, in fact, been used—to access the Legion Park Parcel; speculative guesses as to other potential routes periodically used are insufficient to defeat Legion's motion for summary judgment. The District Court did not err in finding the intent element of an implied easement by preexisting use.

¶25 KFLP additionally argues the District Court resolved disputed material facts as to the scope of the easement. The scope of an implied easement is "controlled by the apparent intent of the landowner who effected a severance of the dominant and servient estates." *Waters*, ¶ 20 (citing *Tungsten Holdings, Inc. v. Kimberlin*, 2000 MT 24, ¶ 27, 298 Mont. 176, 994 P.2d 1114, *overruled on other grounds by Shammel v. Canyon Res. Corp.*, 2003 MT 372, 319 Mont. 132, 82 P.3d 912); *see also JRN Holdings*, ¶ 38. The original owner's intent as to the scope of an implied easement is determined by "not only the actual uses

12

being made at the time of the severance, but also to such uses as the facts and circumstances show were within reasonable contemplation of the parties at the time of the conveyance." *Tungsten Holdings,* ¶ 25 (citation omitted). The extent of an easement created by implication "is to be measured . . . by such uses as the parties might reasonably have expected from future uses of the dominant tenement." *Tungsten Holdings,* ¶ 27 (quoting Restatement of Prop.: Servitudes, § 484 cmt. b (Am. Law Inst. 1944)). Thus, the court's role in determining the scope of an implied easement is limited to the reasonable uses at the time of severance and those future uses that the parties might have reasonably expected.

¶26 The District Court did not err by determining that the undisputed facts establish the scope of the easement to provide ingress and egress to the Legion Park Parcel to Legion, its invitees, and the public. KFLP has failed to provide any evidence that limits the scope of that easement—there is nothing in the record to support an intent of any other uses for the Access Road other than general access to Legion Park.

¶27 The District Court did not err in granting summary judgment to Legion and in quieting title in favor of Legion's implied easement by preexisting use of the Access Road. The Access Road has and shall continue to provide access to the Legion Park Parcel to Legion, its invitees, and the public.

3. *Whether the District Court abused its discretion in granting attorney fees without holding an evidentiary hearing.*

¶28 The District Court awarded Legion its attorney fees as supplemental relief pursuant to § 27-8-313, MCA, in the Uniform Declaratory Judgments Act. KFLP appeals this decision, arguing the District Court erred in awarding fees without holding an evidentiary

13

hearing to demonstrate the proper amount of fees. KFLP asserts it requested a hearing not only on the amount of fees awarded but also on whether the award was "appropriate." Legion agrees with KFLP that the District Court should have held an evidentiary hearing on the amount of attorney fees, but argues KFLP limited its request for a hearing in the proceedings below to the reasonableness of the amount of the award. Legion further argues KFLP has not provided any legal authority to support its claim that it is entitled to a hearing on the propriety of the award itself.

¶29 KFLP has limited its objection below and on appeal as to the amount of attorney fees and not the appropriateness of the grant itself. In the briefing below, KFLP's request for a hearing was expressly limited to the reasonableness of any fee award contingent on the court first granting attorney fees: "[I]f the Court is inclined to award fees to the Legion, KFLP requests an evidentiary hearing *on the reasonableness of those fees*." In its opening brief on appeal, KFLP did not provide any reasoning, nor provide any citation to authority, as to why the grant of attorney fees itself was an abuse of discretion. The burden to establish a district court's error lies with the appellant and "cannot be established in the absence of legal authority." *State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, 133 P.3d 206 (quoting *State v. Bailey*, 2004 MT 87, ¶ 26, 320 Mont. 501, 87 P.3d 1032). It is not this Court's "obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339 (citation omitted). Therefore, we limit our review to whether the District Court erred in holding a reasonableness hearing as to the amount of attorney fees awarded.

14

¶30 We have consistently held that a court must hold an evidentiary hearing rather than award attorney fees "based solely on the affidavit of counsel." *Rothing*, ¶ 53 (citing *Rossi v. Pawiroredjo*, 2004 MT 39, ¶ 29, 320 Mont. 63, 85 P.3d 776). An award of attorney fees "must be based on competent evidence" and proper determination of the amount of fees is "central to the efficient administration of justice and maintenance of public confidence in the bench and bar." *Rossi*, ¶ 29 (quoting *First Sec. Bank of Bozeman v. Tholkes*, 169 Mont. 422, 429, 574 P.2d 1328, 1332 (1976)).

¶31 KFLP requested an evidentiary hearing in its brief opposing Legion's application for attorney fees. The court awarded Legion its attorney fees as supplemental relief under § 27-8-313, MCA, but based the amount of those fees solely on the affidavit of Legion's counsel. The District Court failed to hold an evidentiary hearing regarding the reasonableness of the award. Without consideration of evidence to support the amount requested, the award in this case was improper. *Rothing*, ¶ 54.

## CONCLUSION

¶32 The parties agree the Town's easement is limited by the express terms of the written conveyance. To the extent the District Court ostensibly expanded the scope of the 1913 written easement by granting summary judgment against KFLP on the Town's complaint, this ruling is reversed. We affirm the District Court's ruling that Legion has an implied easement by preexisting use. We reverse the District Court's grant of attorney fees to Legion as to the amount of fees awarded, and remand for an evidentiary hearing as to the reasonableness of those fees.

15

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

16